UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| DEREK MASON and MICHELLE MASON, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 4:18-CV-00651 JCH ) ) |
| C.R. ENGLAND, INC. and MATTHEW SMITH, | ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motions for Partial Summary Judgement (ECF Nos. 59, 64), Defendants Motion to Limit the Testimony of Plaintiff's Pain Management Expert (ECF No. 55) and Defendant's Motion to Limit the Testimony of Plaintiff's Vocational Rehabilitation Expert. (ECF No. 57). The Motions are fully briefed and ready for disposition.

## BACKGROUND

Plaintiff's cause of action arises out of a motor vehicle accident on March 5, 2017. (ECF No. 61 ¶ 1). Defendant Smith was operating a tractor-trailer on eastbound Interstate 70 near its intersection with Interstate 270 in St. Louis County, Missouri. *Id.* ¶ 2. Defendant Smith struck an emergency vehicle, a police vehicle, that was stopped on the highway or the shoulder with its lights flashing. *Id.* Plaintiff Derek Mason was in the front passenger side of the police vehicle. *Id.* ¶ 3.

1

At the time of the accident, Defendant Smith was employed by Defendant C.R. England. *Id.* ¶ 4. Defendant CR England has admitted that Defendant Smith was acting within the scope of his employment. *Id.* The parties dispute the following events:

Defendant Smith testified that he was initially in the right lane when he saw emergency vehicles stopped ahead of him. *Id.* ¶ 9, citing Deposition of Matthew Smith, at 52:12-54:5. Defendant Smith further testified that, after seeing the emergency vehicles, he moved to the center lane and used his turn signal. *Id.* Defendant Smith testified that he looked down for a second or two due to some commotion inside the cab; that when he looked back up he was on top of the parked police vehicle; and that he did not know how far he may have traveled while looking down. *Id.* ¶ 10 citing Smith Depo. at 52:12-22, 54:16-55:10; 56:25-57:80; 60:25-61:20. Defendant Smith also testified that he tried to swerve back to the left to avoid hitting the police vehicle. *Id.* ¶ 11 citing Smith Depo. at 65:18-66:20. Defendant Smith believes that the parked police vehicle was over the white line that divided the right lane of traffic with the shoulder and that his tractor-trailer never went onto the right shoulder. *Id.* ¶¶ 14-15, citing Smith Depo. at 126:13-127:10; 60:17-22.

Plaintiff asserts that Defendant Smith's testimony can be contradicted by their witness, Mr. Jonathan Cruz. Mr. Cruz testified that he was traveling behind the tractor-trailer when the crash occurred. (ECF No. 78, at 7 (citing Deposition of Jonathan Cruz at 16:1-19)). Mr. Cruz stated that he was traveling either in the middle or left lane when he saw bright flashing lights on the right side of the highway. *Id.,* citing Cruz Depo. at 16:1-12. Mr. Cruz testified that he was:

> traveling about 65, 70 that morning heading downtown, and in front of me I saw a tractor-trailer obviously going faster than me because he was…way ahead of me. But from a distance I saw the tractor-trailer start going from the middle lane and kind of – as if someone was either…not paying attention... fell asleep and started drifting, and that's when I noticed, when he stated drifting… the truck hit both vehicles and then kept going. And there was that third vehicle that they had

originally pulled over. Once he hit that third vehicle, the truck hit the… guardrail on the right side, bounced back over to the middle of the highway, and that's when I stopped…in front of the truck over there.

*Id.*, citing Cruz Depo. at 16:20-17:19. Mr. Cruz also testified that he observed the tractor-trailer in front of him in the middle lane of Interstate 70. *Id.*, citing Cruz Depo. at 18:5-10.

The front passenger side of the tractor-trailer operated by Defendant Smith hit the rear driver side of the police vehicle. (ECF No. 61, ¶ 13). Defendants have stipulated that Defendant Smith was negligent in connection with the operation of his vehicle at the time of the accident. *Id.* ¶ 25 (citing ECF No. 32, Stipulation). As a result of the accident, Plaintiffs have filed their Complaint which contains the following nine counts.

I. Negligence against Defendant Smith
II. Negligence Per Se against Defendant Smith
III. Vicarious Liability against Defendant C.R. England for Defendant Smith's Negligence
IV. Vicarious Liability against Defendant C.R. England for Defendant Smith's Negligence Per Se
V. Independent Negligence against Defendant C.R. England
VI. Direct Negligence against Defendant C.R. England for Negligent Hiring or Retention
VII. Direct Negligence against Defendant C.R. England for Negligent Training
VIII. Direct Negligence against Defendant C.R. England for Negligent Supervision and Retention
IX. Loss of Consortium by Michelle Mason against Defendant Smith and Defendant C.R. England

## DISCUSSION

### I. Standard for Summary Judgement

The Court may grant a motion for summary judgement if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes

3

over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256. In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id.* at 249.

## II.     **Defendant's Motion for Summary Judgement as to C.R. England's Independent Negligence**

Defendant C.R. England's Motion for Partial Summary Judgement (ECF No. 64) is directed at Counts V-VIII of Plaintiffs' Complaint. Defendant C.R. England asserts that under *McHaffie v. Bunch*, 891 S.W. 2d 822, 826-27 (Mo. banc. 1995), "once an employer has admitted respondeat superior liability for a driver's negligence, it is improper to allow a plaintiff to proceed against the employer on any other theory of imputed liability," *Id*., at 826. Defendant C.R. England has admitted that Defendant Smith was C.R. England's employee and was acting in the course and scope of his employment at the time of the accident. Plaintiffs in response state that they do not resist dismissal of Counts V-VIII of Plaintiffs' Complaint. (ECF No. 79). Therefore, the Court will dismiss Counts V-VIII of the Plaintiffs' Complaint, leaving Counts I-IV and IX.

### III.     Defendant's Motion for Summary Judgement as to Punitive Damages

Defendant C.R. England's second Motion for Partial Summary Judgement (ECF No. 59) is directed at Plaintiffs' request for punitive damages in this case. Defendant C.R. England asserts that under Missouri law, "[i]n a negligence case, punitive damages are awarded only if, at the time of the negligent act, the defendant knew or had reason to know that there was a high degree of probability that the action would result in injury." *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 813 (Mo. App. W.D. 2008). This requires evidence that "the defendant showed a complete indifference to or conscious disregard for the safety of others." *Id.* at 813. Conscious disregard or complete indifference involves "knowledge of surrounding circumstances and existing conditions, that, although lacking specific intent to injure, the person's conduct or failure to act will naturally and probably result in injury." *Id.*

In a negligence case, punitive damages may be "properly submitted upon evidence that the defendant knew or had information from which he, in the exercise of ordinary care, should have known that the alleged negligent conduct created a high degree of probability of injury, and thereby showed complete indifference or conscious disregard for the safety of others." MAI 10.07; *see also, Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc.*, 700 S.W.2d 426, 436 (Mo. banc. 1985)(declined to extend on other grounds by *Couzens v. Donohue*, 854 F.3d 508 (8th Cir. 2017)). Further under Missouri law, evidence of failure to follow motor carrier regulations and industry standards is permitted to support an award of punitive damages against commercial motor carriers. *Ellis v. Elkins*, No. 5:18CV6121 NKL 2018 WL 6331706, at *2 (W.D. Mo. Dec. 4, 2018); *Kyles v. Celadon Trucking Servs.*, 6:15-CV-3193 MDH 2015 WL 6143953 at *4 (October 19, 2015)(stating that it is sufficient for the plaintiff to allege violations of federal trucking regulations and industry standards to support an award of punitive damages under Missouri Law). Violations

of one's own standards can be such reckless conduct as to constitute conscious indifference for the purposes of establishing punitive damages. *First national Bank of Fort Smith v. Kansas City Southern Railway Co.*, 865 S.W.2d 719, 730 (Mo. App. W.D. 1993).

Defendants argue that they are entitled to partial summary judgement on the issue of punitive damages because the Plaintiffs have not produced sufficient evidence to support an award of punitive damages. In support thereof, the Defendant cites the deposition of Defendant Smith, suggesting that his account of the accident does not give rise to any inference of conscious disregard for the safety of others. Furthermore, the Defendant argues that "Smith understood that changing lanes to give a parked emergency vehicle as much room as possible was required by the Federal Motor Carrier Safety Regulations." (ECF No. 60, citing ECF No. 61 Statement of Uncontroverted Material Facts, at ¶ 47). Plaintiffs in response submit the testimony of Plaintiffs' Witness, Mr. Cruz, and argue that testimony shows Defendant Smith failed to abide by motor safety policies and instead did the opposite of what was required. (ECF No. 77, at 2). Specifically, Plaintiff's witness, Mr. Cruz, contradicts whether Defendant Smith slowed down before the accident and whether Defendant Smith moved into the center lane to give more room to the emergency vehicles or if he was in the center lane before drifting and hitting the emergency vehicles. Furthermore, the testimony by Defendant Smith raised in the Defendant's motion raises questions of fact regarding whether or not Defendant Smith attempted to avoid the accident before impact or if Defendant Smith was looking away from the road and did not look up until after impact had occurred. "[Defendant] Smith testified that he looked down for maybe a second or two, due to some commotion inside the cab, and that when he looed back up he was on top of the parked police vehicle" (ECF No. 60 citing ECF No. 61 at ¶10). Defendant Smith also testified that "a split second before impact, he tired to swerve back to the left to avoid hitting the parked police vehicle."

*Id.,* citing ECF No. 61 at ¶11. Defendant also testified that he "did not know how far he traveled while looking down." *Id.* citing ECF No. 61 at ¶10.

There is a question of fact in this case as to the conduct of Defendant Smith. The Court finds that in light of *Kyles v. Celadon,* and *Ellis v. Elkins*, which allow for the introduction of evidence that the Defendant violated trucking motor standards as evidence of punitive damages, a jury question of whether Defendant Smith's conduct was reckless enough to impose punitive damages is not precluded in this case. The Court will deny Defendant C.R. England's Motion for Partial Summary Judgement as to punitive damages.

## IV. <u>**Defendant's Daubert Motions**</u>

Defendant C.R. England further moves to exclude certain evidence brought by Plaintiffs' experts. Defendant C.R. England specifically seeks the exclusion of testimony by Plaintiffs' pain management expert Dr. Kaylea Boutwell regarding any reference to biologic therapy and platelet-rich plasma ("PRP"), autologous stem cells and/or exosomes (ECF No. 55), and testimony by Plaintiffs' vocational rehabilitation expert, Delores Gonzalez regarding her opinion that Plaintiff Derek Mason, will not be able to return to work because his taking lawfully prescribed narcotic pain medication would result in him failing pre-employment drug testing and potential employers therefore not hiring him. (ECF No. 57).

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Fed. R. Evid. 702. The rule states that:

> A witness who is qualified as an expert by knowledge, skill or experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "[T]he trial judge acts as the 'gatekeeper,' screening expert testimony for relevance and reliability." *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). "A witness can be qualified as an expert by 'knowledge, skill, experience, training or education,' and it is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001)(citing *Kumho Tire Co.*, *Ltd. V. Carmichael*, 526 U.S. 137,156 (1999)(internal citations omitted)). The trial court must also "ensur[e] that the actual testimony does not exceed the scope of the expert's expertise." *Wheeling*, 254 F.3d at 715. The qualifications of Plaintiffs' experts are not being challenged. Defendant C.R. England challenges the scope of their testimony.

   a. **Testimony of Dr. Kaylea Boutwell**

Defendant C.R. England argues that Dr. Kaylea Boutwell should be precluded from testifying about biologic therapies, including injections, with PRP, autologous stem cells or exosomes ("Biologic Therapies"), which she proposes may be used in the future treatment of Plaintiff Derek Mason. (ECF No. 55). Defendant argues that these Biologic Therapies are experimental and are therefore unreliable under the *Daubert* test. (ECF No. 56, at 3).

Dr. Boutwell, in her report states that Plaintiff will more likely than not require Biologic Therapy over the course of his life and that the Biologic Therapy needed would likely cost

$9,000.00 every three years. Defendant argues that testimony regarding Biologic Therapies is unreliable because the science is experimental and cites to the opinion of their own medical expert. (ECF No. 56, at 5). Defendant's expert argues that "the evidence supporting biologics in the spine is currently at best considered quasi experimental". She further states that "the biologic components, the timing of he treatment as well as the location of these injections cannot be supported with clinical evidence at this time" and that "there are no food clinical studies indicating that they're appropriate for spine treatment" (ECF No. 56, at 5 citing Dr. Hurford Deposition, at 122:19-123:4).

Dr. Boutwell is Plaintiff's treating physician for pain management. (ECF No. 75, at 3). Her opinion is that the Plaintiff will more likely than not need Biologic Therapy over the course of his life. *Id.* citing 75-1, Boutwell Report, at 9. Dr. Boutwell testified regarding the effectiveness of Biologic Therapies stating that:

> …there's a host of papers that are available. Most of them are empiric evidence at this juncture, so they're not considered Level 1 randomized control trial academic papers. But tens of thousands of patients at this juncture that have been treated by the Stem Cell Network, for example, out in California, Docere… Clinic, Harry Adelson, in Park City, are treating patients on almost a daily basis with this specific type of therapy for this specific type of problem or success.

(ECF No. 75, at 4, citing Boutwell Depo. at 184:1-17). Dr. Boutwell, on the topic of peer review studies regarding Biologic Therapies testified that, "… Centeno with Regenexx, have all produced volumes and volumes of clinical, clinically based patient outcomes relative to these with standardization protocols." *Id.* citing Boutwell Depo. at 184:18-185:4.

While Dr. Boutwell's future treatment recommendation for the Plaintiff remains experimental, it is within her scope of expertise to provide recommendations as to the Plaintiff's future treatments for pain management. While a district court judge may reject expert testimony if the analytical gap between the data and the expert's opinion is too great, *see, Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), the Court does not find that to be the case here. Plaintiff has provided a qualified medical expert, his treating physician on pain management. Upon researching emerging treatments for Plaintiff's injuries, Dr. Boutwell provided her opinion that, in the future, the Plaintiff will likely be a recipient of Biologic Therapy. This is not such an analytical gap as to preclude her testimony. As Defendant has noted in its briefing, Defendant has and will be able to provide an expert to refute Dr. Boutwell's opinion that Plaintiff's future treatment ought to include Biologic Therapy. This is sufficient to allow the jury as trier of fact to determine whether the Plaintiff is in fact likely to undergo future Biologic Therapy. Defendant's Motion to limit the testimony of Dr. Boutwell is therefore denied.

    b.  **Testimony of Delores Gonzalez**

Defendant C.R. England argues that Delores Gonzalez's opinion that the Plaintiff is unemployable is not supported by the medical evidence and is therefore beyond the scope of her testimony as a vocational rehabilitation expert. (ECF No. 58, at 7). Defendant specifically objects to Ms. Gonzalez's opinion that the Plaintiff is completely unemployable because his lawfully prescribed narcotic pain medication would result in him failing preemployment drug testing and would therefore not be hired. *Id. at 8-9*, citing Gonzalez Deposition at 68:17-72:19; 104:19-105:11. Defendant specifically states that Ms. Gonzalez's opinion regarding Plaintiff's lawful drug use goes beyond the scope of her expertise because it is an instance in which Ms. Gonzalez, as a rehabilitation expert, opines about legal issues that are not within her area of expertise.. *Id. At* 9-

13. Ms. Gonzalez, when asked if it would be legal for potential employers to not hire someone because they were taking prescription medicine, indicated that she did not know. *Id.* citing, Gonzalez Depo. at 119:15-23 – 120:2-18). Defendant argues that her opinion implicates and fails to address the American with Disabilities Act ("ADA") which provides that employers may not make such action except in limited circumstances. *Id.* citing 42 U.S.C. §12112(d)(2)(A)-(B).

In opposition to the Defendant's motion, Plaintiffs state that there was medical evidence for Ms. Gonzalez' opinion that Plaintiff Mason could not return to work. Dr. Brett Taylor, Plaintiff Mason's orthopedic surgeon, has stated that the Plaintiff has a life-long five-pound lifting restriction and sedentary employment capacity restriction. (ECF No. 76, at 3 (citing Taylor Deposition at 105:16-25)). Dr. Taylor also stated that the Plaintiff would not be able to return to work as a Missouri State Highway Patrol Trooper. *Id.*, citing Taylor Depo. at 99:18-100:8). Ms. Gonzalez's final opinion is that Plaintiff is not a candidate for vocational rehabilitation, because he is not currently capable of any competitive work as a result of the March 5, 2017 crash. *Id.*, citing ECF No. 76-1, Ms. Gonzalez Expert Report, at 54-55. Ms. Gonzalez specifically states that:

> [Plaintiff] would not present well in a job interview because he appeared sleepy and had problems with memory, focus, and concentration. He noted it was very painful to move his head up and down to read or to look up. Looking down gave him a headache and his right hand cramped constantly when he was writing. He stood stretched and walked approximately every 15-20 minutes throughout the interview due to back and neck pain and stiffness.
>
> Finally, Mr. Mason's impairments have produced pain of considerable intensity, frequency, and duration and have affected his ability to perform basic work-related functions. His impairments remain significant despite surgeries, injection therapies, narcotic pain medications and regular medical attention and treatment. Mr. Mason's impairments have severely compromised his ability either to return to his past relevant jobs or to perform any job on a sustained basis. It remains my professional vocational

> opinion that [Plaintiff] is not a candidate for vocational rehabilitation as he is not currently capable of any competitive work as a result of the accident of 3-5-17.

(ECF No. 76, citing ECF No. 76-1, p. 54-55). Ms. Gonzalez testified that in forming her expert opinion she performs a sequential evaluation process that reviews medical records, considers a personal evaluation of the person, and takes into consideration a person's, age, education, work history, the transferability of skills based on residual functional capacity and work restrictions. ECF No. 76, citing Gonzalez Depo. at 88:16-89:10). She further testified that additional factors in coming to her unemployability conclusion were Plaintiff's five-pound weight restriction and the fact that the Plaintiff was taking narcotic pain medication. (ECF No. 76, citing Gonzalez Depo. at 129:20-130:8). Ms. Gonzalez also stated that in her experience of placing individuals in the labor market, failing a drug test for narcotic pain medication will result in not being hired. (ECF No. 76, citing Gonzalez Depo. at 70:25-71:13).

The Court finds that Ms. Gonzalez's opinion that because of Plaintiff's lawful narcotic drug use he will not be hired due to a failed drug test, is beyond the scope of her expertise. Ms. Gonzalez goes beyond the scope of her expert opinion because she is not qualified as an expert to give an opinion based on legal principals regarding the failure of an employer to hire those taking prescribed narcotics. Even if Ms. Gonzalez's opinion about Plaintiff's employability regarding Plaintiff's lawful drug use was within the scope of her expert opinion, it is too speculative to be admissible because it assumes that all employment opportunities available to the Plaintiff require preemployment drug screening and that even if there is preemployment drug screening all potential employers would refuse to hire the Plaintiff even if it may constitute a violation of the law to do so. Ms. Gonzalez's may give her opinion as to Plaintiff's employability based on the medical evidence, the restrictions placed on the Plaintiff, and Plaintiff's personal evaluation.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant C.R. England's Motion for Partial Summary Judgement as to the independent negligence of C.R. England (ECF No. 64) is **GRANTED**. Counts V-VIII of Plaintiffs' Complaint (ECF No.1) are therefore **DISMISSED.**

**IT IS FURTHER ORDERED** that Defendant C.R. England's Motion for Partial Summary Judgement as to punitive damages (ECF No. 59) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant C.R. England's Motion to Limit the Testimony of Plaintiff's Vocational Rehabilitation Expert (ECF No. 57) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant C.R. England's Motion to Limit the Testimony of Plaintiff's Pain Management Expert (ECF No. 55) is **DENIED**.

Dated this 22nd day of October 2019.

/s/ Jean C. Hamilton
JEAN C. HAMILTON

UNITED STATES DISTRICT COURT